UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| FRANCISCA AJAI NDETA LUMUMBA,<br><br>Plaintiff,<br><br>v.<br><br>PIERCE COUNTY; PIERCE COUNTY JAIL; PIERCE COUNTY SHERIFF'S OFFICE; NAPHCARE INC; MULTICARE HEALTH SYSTEM; JOSHUA PILAND; ALEX UTI; JOHN DOES 1-10; JANE DOES 1-5,<br><br>Defendants. | Case No. 3:25-cv-05381-TMC<br><br>ORDER ON PENDING MOTIONS |

## I.    INTRODUCTION

This case arises from the arrest and detention of self-represented Plaintiff Francisca Ajai Ndeta Lumumba in January 2025. Before the Court are several motions. There are three motions to dismiss Ms. Lumumba's third amended complaint, each submitted by a different set of Defendants: the first by Pierce County, Pierce County Jail Administration, Pierce County Sheriff's Office, and Deputies Joshua Piland and Alex Uti (collectively "Pierce County defendants"), Dkt. 72; the second by MultiCare Health System ("MultiCare") and Alexandra Brown (collectively "MultiCare defendants"), Dkt. 74; and the last by NaphCare Inc. ("NaphCare"). Dkt. 75. Also before the Court is Ms. Lumumba's motion to amend her complaint

ORDER ON PENDING MOTIONS - 1

for the fourth time, filed while the three motions to dismiss the third amended complaint were pending. Dkt. 94.

Ms. Lumumba's motion to amend her complaint is GRANTED, making her proposed fourth amended complaint the operative complaint. After analyzing the three motions to dismiss in light of the newly operative complaint, the Court also orders the following. The Pierce County defendants' motion to dismiss, Dkt. 72, is GRANTED in part and DENIED in part. NaphCare's motion to dismiss, Dkt. 75, is GRANTED. The MultiCare defendants' motion to dismiss, Dkt. 74, is GRANTED. Further leave to amend will not be granted.

## II.    BACKGROUND[1]

### A.    Facts

On September 15, 2024, Ms. Lumumba was in a "catastrophic single-vehicle accident." Dkt. 94-1 at 4. She was "fully ejected from the vehicle," and later found "unconscious, unresponsive, and face-down on the roadway." *Id.* at 4–5. As a result of the accident, Ms. Lumumba suffered "severe traumatic brain injury, diffuse axonal injury, multiple cervical spine fractures, rib fractures, facial fractures, dysphagia, impaired cognition, and profound mobility limitations." *Id.* at 5.

After several weeks in the hospital, Ms. Lumumba entered a rehabilitation facility for "continued 24-hour nursing care and therapy services, as she remained medically fragile and unable to safely live independently." *Id.* at 5–6. She was discharged from the facility on November 27, 2024, when she was unable to pay for her continued stay. *Id.* at 6. On December 6, 2024, Ms. Lumumba visited her primary care doctor, who prescribed her sertraline. *Id.*

---

[1] The Court accepts all allegations within the fourth amended complaint as true and draws all reasonable inferences in favor of the nonmoving party when evaluating a Rule 12(b)(6) motion. *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014).

ORDER ON PENDING MOTIONS - 2

On January 1, 2025, Ms. Lumumba "remained medically fragile, necessitating significant care and precautions." *Id.* The newly prescribed sertraline caused Ms. Lumumba to become "confused, disoriented, agitated, and unable to regulate her emotions or safely care for herself." *Id.* at 7. Her family "observed a sudden and alarming change in her behavior" and called 911 "seeking medical assistance, not law-enforcement intervention." *Id.* The 911 caller informed dispatch that Ms. Lumumba was dealing with a "medical and psychiatric crisis rather than criminal conduct," and the "call was made solely because her condition deteriorated and urgent medical support was needed." *Id.* The 911 caller mentioned that Ms. Lumumba "grabbed a knife," but clarified that he "took the knife away from her." *Id.*

EMS personnel and five Pierce County Sheriff's Office deputies responded to the call, including Deputies Piland and Uti. *Id.* at 10. Upon their arrival, Ms. Lumumba was seated on the floor against the wall, unarmed, "unable to stand or walk without assistance, disoriented, neurologically impaired, and visibly in pain." *Id.* Deputies pulled Ms. Lumumba by her arms, twisting her upper body to force her onto a chair. *Id*. at 11.

Deputy Piland asked Ms. Lumumba for the knife mentioned in the 911 call, which a family member handed to him. *Id.* The family member repeatedly told Deputy Piland that "no domestic violence incident had occurred," and "begged him to stop escalating the situation." *Id.* Deputies Piland and Uti arrested Ms. Lumumba, using physical force despite her visible fragility, that "impacted her spine, injured hand, and existing wounds, caused intense pain and prompted [Ms. Lumumba] to cry out." *Id.* at 13. Deputy Piland "mischaracterized [Ms. Lumumba's] involuntary neurological symptoms . . . as 'non-compliance' and 'refusal,' despite being clearly informed . . . that she could not stand or walk" due to her injuries. *Id.* at 11.

When the Deputies attempted to place Ms. Lumumba into their patrol car, she "repeatedly tried different turns but physically could not go in and sit upright due to her cervical-

ORDER ON PENDING MOTIONS - 3

spine injuries, neurological deficits, and open wounds." *Id.* at 14. Deputy Piland insisted on Ms. Lumumba sitting upright in the patrol vehicle, but it was impossible for her. *Id.* Ms. Lumumba was ultimately transported to the jail, in severe pain, by sitting sideways across the rear bench of the patrol vehicle. *Id.*

When she arrived at Pierce County Jail, Ms. Lumumba struggled to exit the patrol car and was placed on the floor while waiting to complete her medical intake. *Id.* at 15. A NaphCare nurse informed a jail sergeant that Ms. Lumumba was "medically unstable, unable to walk, recently hospitalized, and required hospital evaluation." *Id.* Pierce County Jail policy requires "immediate rejection of individuals who are medically unstable, unable to ambulate, recently hospitalized, or presenting with neurological impairment." *Id.* Ms. Lumumba was then visited by Brown, MultiCare's Designated Crisis Responder ("DCR"), who evaluated Ms. Lumumba for involuntary treatment under Washington's Involuntary Treatment Act ("ITA"). *Id.* at 4, 15. Brown determined that involuntary commitment was inappropriate for Ms. Lumumba, and "instruct[ed jail] staff to proceed with custodial processing" of Ms. Lumumba. *Id.* at 16.

**B.     Procedural history**

Ms. Lumumba initiated this case on May 5, 2025. Dkt. 1. Ms. Lumumba moved for leave to file her first amended complaint several days later, Dkt. 7, and while that motion was pending, she moved for leave to file her second amended complaint. Dkt. 9. Leave to file the second amended complaint was granted on June 5, 2025. Dkt. 11.

The Pierce County defendants and NaphCare moved to dismiss the second amended complaint on August 5, 2025. Dkts. 38, 39. Three weeks later, and before briefing for the two motions to dismiss had concluded, Ms. Lumumba moved for leave to file her third amended complaint. Dkt. 48. The MultiCare defendants moved to dismiss the second amended complaint

ORDER ON PENDING MOTIONS - 4

on October 2, 2025. Dkt. 65. The Court granted Ms. Lumumba's motion for leave to file the third amended complaint and denied the three pending motions to dismiss as moot. Dkt. 68.

Defendants have renewed the three motions to dismiss based on the allegations in the third amended complaint. Dkts. 72, 74–75. Ms. Lumumba moved for leave to file her fourth amended complaint soon after. Dkt. 94.

### III.    DISCUSSION

#### A.    The Court grants Ms. Lumumba's motion for leave to file her proposed fourth amended complaint.

Before considering the three motions to dismiss Ms. Lumumba's third amended complaint, the Court must determine whether to grant Ms. Lumumba leave to file her fourth proposed amended complaint.

##### 1.    Legal standard

Under Federal Rule of Civil Procedure 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." The Court must apply this policy "with extreme liberality." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (quoting *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001)). The Court has discretion to grant or deny a request to amend but must provide justification when it denies a request. *Foman v. Davis*, 371 U.S. 178, 182 (1962). A motion to amend under Rule 15(a)(2) "generally shall be denied only upon showing of bad faith, undue delay, futility, or undue prejudice to the opposing party." *Chudacoff v. Univ. Med. Ctr. of S. Nev.*, 649 F.3d 1143, 1152 (9th Cir. 2011); *see also Foman*, 371 U.S. at 182. "In exercising this discretion, a court must be guided by the underlying purpose of Rule 15 to facilitate decision on the merits, rather than on the pleadings or technicalities." *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981); *see also Chudacoff*, 649 F.3d at 1152.

2.      *Ms. Lumumba's motion for leave to file her fourth proposed amended complaint is GRANTED.*

Ms. Lumumba argues that she should be granted leave for several reasons. First, the proposed complaint improves readability, clarifying and reorganizing the allegations in "a clearer and more linear manner." Dkt. 94 at 2–3. Second, the proposed complaint includes new information clarifying "policies, medical decisions, and custodial practices," that Ms. Lumumba could not obtain before. *Id.* at 3. Third, the request is not made in bad faith, and granting leave would not prejudice Defendants or cause undue delay. *Id.* at 3–4. The only opposition comes from the MultiCare defendants. Dkt. 96. They argue that further amendment would be futile because the proposed fourth amended complaint carries the same legal flaws as the third amended complaint. *Id.* at 3–5.

The Court grants Ms. Lumumba leave to amend for four reasons. First, leave is appropriate given Ms. Lumumba's pro se status. "[T]he Ninth Circuit has indicated that leave to amend should be liberally granted for pro se litigants in particular." *Leishman v. Wash. Att'y Gen.'s Off.*, No. 2:20-CV-00861-RAJ, 2022 WL 14142372, at *1 (W.D. Wash. Sept. 23, 2022). Second, there is no indication of bad faith on Ms. Lumumba's part. Third, the case remains in its early stages, as discovery has not started. Therefore, leave would not prejudice Defendants. Nor is there any indication of undue delay. Finally, although the fourth amended complaint remains quite long, Ms. Lumumba has provided a clearer summary of the underlying factual allegations, removed unnecessary parties from the caption, and removed six causes of action. Accordingly, the fourth proposed amended complaint is now the operative complaint.

With the newly operative complaint, the Court maintains subject matter jurisdiction. Several claims concern federal question jurisdiction under 28 U.S.C. § 1331. Dkt. 94-1 at 2. The

Court maintains supplemental jurisdiction over the state claims under 28 U.S.C. § 1367(a) as they are related to federal claims. *Id.* at 2–3.

**B.    Motions to dismiss**

The Court must next consider the fate of the three pending motions to dismiss the formerly operative complaint, Ms. Lumumba's third amended complaint.

When a newly operative complaint is filed while a motion to dismiss is pending, "it generally moots the motion to dismiss." *Brown v. Bos. Sci. Corp.*, No. 2:21-CV-01519-LK, 2022 WL 766926, at *1 (W.D. Wash. Mar. 14, 2022). If the newly operative complaint is "substantially identical" to the formerly operative complaint, however, it "will not moot the pending motion to dismiss." *Id.* (quoting *Oliver v. Alcoa, Inc.*, No. C16-0741JLR, 2016 WL 4734310, at *2 n.3 (W.D. Wash. Sept. 12, 2016)). If the newly operative complaint maintains the same issues raised in the motion to dismiss, a court can consider the motion in light of the newly operative complaint. *Bossart v. County of King*, No. 2:25-CV-00975-JNW, 2025 WL 2084411, at *1 (W.D. Wash. July 24, 2025).

Here, except for the subtraction of six claims and the renumbering of the remaining claims, the newly operative complaint is substantially identical to Ms. Lumumba's third amended complaint. Accordingly, the newly operative complaint does not moot the Defendants' three motions to dismiss. Therefore, the Court will consider the three motions to dismiss in light of the new operative complaint. Additionally, because Ms. Lumumba is proceeding *in forma pauperis,* 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to screen the newly operative complaint and consider whether it "fails to state a claim on which relief may be granted."

*1.    Legal standard*

A party's motion to dismiss for failure to state a claim is governed by Federal Rule of Civil Procedure 12(b)(6). Under Rule 12(b)(6), the Court may dismiss a complaint that fails to

present an identifiable legal theory or provide sufficient facts to support a valid legal theory. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010).

A complaint does not need "detailed" facts to survive a Rule 12(b)(6) motion, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), but it must contain facts that, if "accepted as true," can plausibly support a claim "on its face." *Boquist v. Courtney*, 32 F.4th 764, 773 (9th Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009)). A claim is plausible "on its face" if the facts provided allow the Court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id*. (quoting *Iqbal*, 556 U.S. at 678). Additionally, if a plaintiff is pro se, the Court "'construe[s] the pleadings liberally' and 'afford[s] the [plaintiff] the benefit of any doubt.'" *Id.* at 774 (quoting *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010)). But the Court does not assume the truth of legal conclusions presented as facts, *see Twombly*, 550 U.S. at 555, and mere conclusory statements are not enough to support a claim. *Iqbal*, 556 U.S. at 678. "A liberal construction of a pro se complaint . . . does not mean that the court will supply essential elements of a claim that are absent from the complaint." *Boquist*, 32 F.4th at 774 (citing *Litmon v. Harris*, 768 F.3d 1237, 1241 (9th Cir. 2014)).

"[I]n a case alleging the same claim[s] against multiple defendants, there must be specific allegations explaining what each defendant allegedly did wrong, rather than general allegations asserted against them as a group." *Trusov v. Or. Health & Sci. Univ.*, No. 3:23-CV-77-SI, 2023 WL 6147251, at *2 (D. Or. Sept. 20, 2023); *see Evans v. Sherman*, No. 1:19-cv-00226-DAD-BAM (PC), 2020 WL 1923176, at *3 (E.D. Cal. Apr. 21, 2020) (noting that a plaintiff who "simply lumps all defendants together . . . makes it impossible for the Court to draw the necessary connection between the actions or omissions" of the various defendants); *In re Nexus 6P Prods. Liab. Litig.*, 293 F. Supp. 3d 888, 908 (N.D. Cal. 2018) ("Plaintiffs must identify what action each Defendant took that caused Plaintiffs' harm, without resort to generalized allegations

ORDER ON PENDING MOTIONS - 8

against Defendants as a whole." (internal quotation marks omitted) (quoting *In re iPhone Application Litig.*, No. 11-MD-02250-LHK, 2011 WL 4403963 (N.D. Cal. Sept. 20, 2011))); *Wright v. City of Santa Cruz*, No. 13–cv–01230–BLF, 2014 WL 5830318, at *5 (N.D. Cal. Nov. 10, 2014) ("These allegations are inadequate because they lump all defendants together and fail to allege the factual basis for each defendant's liability.").

   2.    *Claims against Pierce County's sub-units*

The Court dismisses all claims against the no-longer-captioned Defendants "Pierce County Jail Administration," "Sheriff's Office," and "911 Dispatch." *See* Dkt. 69 at 1; Dkt. 94-1 at 1. Of the Pierce County-related parties, only Pierce County and Deputies Piland and Uti remain listed as Defendants in the operative complaint. Dkt. 94-1 at 1. Units of Pierce County are not capable of being sued. *Nolan v. Snohomish County*, 59 Wn. App. 876, 883, 802 P.2d 792 (1990) ("[I]n a legal action involving a county, the county itself is the only legal entity capable of suing and being sued."); *see* RCW 36.32.120(6).

   3.    *Count one: "Monell Liability (42 U.S.C. § 1983)"*

This Section 1983 claim, under a *Monell* theory, is made against Pierce County, NaphCare, and MultiCare. Dkt. 94-1 at 19. Ms. Lumumba alleges that the three entities "maintained widespread, longstanding, and well-settled customs, policies, and failures to train that were the moving force behind" violations of her rights to be free from unreasonable seizure, to adequate medical care, to safe conditions of confinement, and not to be detained on fabricated or medically false information. *Id.*

Under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), a plaintiff must prove: "(1) that [the plaintiff] possessed a constitutional right of which [s]he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving

ORDER ON PENDING MOTIONS - 9

force behind the constitutional violation." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (alterations in original) (quoting *Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill*, 130 F.3d 432, 438 (9th Cir.1997)). The Court will consider the claim against each Defendant in turn.

### a)    MultiCare

Ms. Lumumba alleges that "MultiCare maintained a widespread custom of substituting psychiatric clearance for medical clearance to support law enforcement's booking decisions." Dkt. 94-1 at 29. In support of its motion to dismiss count one, MultiCare makes several arguments. First, Ms. Lumumba misunderstands the MultiCare defendants' role in the January 1, 2025 incident, as Brown was there simply to evaluate Ms. Lumumba for detention under the ITA. Dkt. 74 at 9. Second, Ms. Lumumba fails to allege specific facts to support her "generic allegations regarding unconstitutional policies, customs, or practices." *Id.* Third, MultiCare, as an entity, can only be found liable under Section 1983 if MultiCare itself caused the constitutional violation. *Id.*

For several reasons, the Court finds that Ms. Lumumba has not sufficiently pled count one against MultiCare. First, the claim against MultiCare stems from Brown's decision as a DCR on "whether to admit, discharge, release . . . or detain a person for evaluation and treatment." RCW 71.05.120(1). Her determination was to not involuntarily detain Ms. Lumumba. Dkt. 90 at 3. There is no plausible allegation that Brown made the decision to detain Ms. Lumumba on criminal charges. Nor are there are any plausible allegations that a policy of MultiCare's caused Brown's actions. Second, this claim concerns a single instance, and the allegations provided do not fit within any exception to allow *Monell* liability for a single act. *Benavidez v. County of San Diego*, 993 F.3d 1134, 1154 (9th Cir. 2021) ("[G]enerally, a single instance of unlawful conduct is insufficient to state a claim for municipal liability under section 1983."). Accordingly, the Court grants MultiCare's motion to dismiss count one with prejudice.

ORDER ON PENDING MOTIONS - 10

### b)    NaphCare

Ms. Lumumba alleges that NaphCare "initially rejected [her] for booking" after identifying various disqualifying health issues, then "contradicted its own findings" by "failing to demand hospital transport," and "allowing booking to proceed." Dkt. 94-1 at 28–29. She concludes that "[t]hese customs" resulted in her "medical deterioration, pain, respiratory distress, and neurological decline and collapse" the following day. *Id.* at 29.

In support of its motion to dismiss count one, NaphCare makes several arguments. First, Ms. Lumumba simply makes conclusory assertions that NaphCare maintained a custom without describing "with any sufficient particularity" the custom "she purports to allege as controlling" or how it relates to the decision-making process of Pierce County Sheriffs in arresting her or providing her medical care after she was booked into Pierce County Jail. Dkt. 92 at 4. Second, Ms. Lumumba does not provide "sufficient factual allegations regarding any personal participation by a medical staff member or others to support her *Monell* claim." *Id.* Third, even if Ms. Lumumba showed a custom or practice, she cannot "show that the allegations were anything more than a random act or single instance of misconduct." *Id.* at 5.

The Court finds that Ms. Lumumba has not sufficiently pled this claim against NaphCare. Ms. Lumumba has not alleged a custom or policy of NaphCare's that caused her alleged injury. As explained above, this claim concerns a single instance, and the allegations provided do not fit within an exception to allow *Monell* liability for a single act. *Benavidez*, 993 F.3d at 1154. Accordingly, the Court Grants NaphCare's motion to dismiss count one with prejudice.

### c)    Pierce County

Ms. Lumumba alleges that Pierce County "maintained a longstanding custom in which deputies routinely overrode medical-rejection decisions," and "continuing with jail booking of medically unstable detainees" despite Pierce County policy requiring otherwise. Dkt. 94-1 at 24–

ORDER ON PENDING MOTIONS - 11

25. Pierce County argues that this claim should be dismissed because Ms. Lumumba identifies "no policy or custom attributable to Pierce County, much less a causal link between any policy or custom and the alleged constitutional violation." Dkt. 72 at 15.

The Court grants Pierce County's motion to dismiss count one with prejudice. Ms. Lumumba provides only conclusory statements regarding Pierce County's "longstanding custom" of overriding "medical-rejection decisions," without allegations to suggest that such an override happened outside the January 1, 2025 incident. Dkt. 94-1 at 24–25. This claim concerns a single instance, and the allegations provided do not fit within an exception to allow *Monell* liability for a single act. *Benavidez*, 993 F.3d at 1154.

> 4. *Count two: "Declaratory Denial of Qualified Immunity, ADA 'Immunity, and State-law Immunities."*

The Court construes this "count," not as a separate claim, but as an argument against Defendants' potential assertion of immunity against other counts in her complaint.

> 5. *Count three: "Fabrication of Evidence and Misclassification of Medical Crisis"*

The claim is made under "42 U.S.C. § 1983 [("Section 1983")] – Fourteenth Amendment Due Process; RCW 40.16.030 False Records ADA Title II; Section 504." Dkt. 94-1 at 40. This claim is made against the "Deputies," however, the factual allegations discuss only Deputy Piland's mischaracterization of Ms. Lumumba's circumstances. *Id.* at 11, 40. As a result, the Court construes this as a Section 1983 claim, alleging that Deputy Piland violated Ms. Lumumba's right to due process when he "falsely classified [her] sertraline-induced medical crisis as a domestic violence incident, despite overwhelming evidence to the contrary." *Id.* at 40.

An investigator who "deliberately mischaracterizes" facts in their investigative report "commits a constitutional violation." *Spencer v. Peters*, 857 F.3d 789, 798 (9th Cir. 2017) (quoting *Costanich v. Dep't of Soc. & Health Servs.*, 627 F.3d 1101, 1111 (9th Cir. 2010)). "To

ORDER ON PENDING MOTIONS - 12

prevail on a § 1983 claim of deliberate fabrication, a plaintiff must prove that (1) the defendant official deliberately fabricated evidence and (2) the deliberate fabrication caused the plaintiff's deprivation of liberty." *Id.* A plaintiff may establish causation by showing that

> (a) the act was the cause in fact of the deprivation of liberty, meaning that the injury would not have occurred in the absence of the conduct; and (b) the act was the "proximate cause" or "legal cause" of the injury, meaning that the injury is of a type that a reasonable person would see as a likely result of the conduct in question.

*Id.*

Ms. Lumumba has sufficiently pled count three against Deputy Piland. She alleges that he misclassified her "neurological crisis as domestic violence," and his "fabricated narratives regarding danger, 'refusal,' and the knife" caused "the resulting unlawful seizure, use of force, and denial of medical care." Dkt. 94-1 at 12, 41. The arrest occurred despite Ms. Lumumba's "voluntary surrender of the sertraline bottle," "visible . . . cervical brace," "inability to ambulate," and family informing Deputy Piland that "[t]his is a medication reaction," not a domestic incident. *Id.* at 40–41. Accordingly, the Court denies Deputy Piland's motion to dismiss count three.

6.      *Count four: "Equal Protection (Racial Discrimination)"*

This claim is made under Section 1983 and the Fourteenth Amendment. *Id.* at 44. Ms. Lumumba alleges that Defendants "intentionally subjected [her]—a Black woman with well-documented disabilities— to harsher, more dangerous, and systematically disparate treatment than similarly situated non-Black detainees with comparable or lesser medical needs," when they "ignore[d her] medical instability," "book[ed] her despite clear contraindications for custody," "escalate[d] her as a threat despite no weapon or violent conduct," and "den[ied] her disability-related accommodations." *Id.* at 44–45. The Court construes this as a claim against Deputies Piland and Uti.

ORDER ON PENDING MOTIONS - 13

The Court finds that this count has not been sufficiently pled. Ms. Lumumba provides only conclusory statements insufficient to state a plausible claim of race discrimination. She does not provide factual allegations that the Deputies' actions were grounded in racial discrimination. *McMillan v. Togus Reg'l Off., Dep't of Veterans Affs.*, 120 F. App'x 849, 852 (2d Cir. 2005) ("Conclusory allegations of racial discrimination are insufficient to maintain a § 1983 action."). Accordingly, count four is dismissed with prejudice.

7.    *Count five: "Excessive Force By Deputies"*

This claim is made under "42 U.S.C. § 1983 – Fourth & Fourteenth Amendments; Equal Protection Clause; Americans with Disabilities Act, 42 U.S.C. § 12132; Section 504 of the Rehabilitation Act, 29 U.S.C. § 794." Dkt. 94-1 at 45. Ms. Lumumba alleges that she was the victim of "excessive and objectively unreasonable" force when Deputy Piland "intentionally applied physical force to [her] wounds and healing IV site, causing worsening injury, increased pain, and subsequent need for surgical intervention." *Id.* at 47. The Court construes this claim as an excessive force claim under Section 1983 against Deputies Piland and Uti.

In support of their motion to dismiss count five, the Deputies make several arguments. First, Deputy Uti is not mentioned in the relevant allegations. Dkt. 72 at 10; *see* Dkt. 94-1 at 46–47. Second, the allegations that Deputy Piland manhandled Ms. Lumumba and applied an unspecified degree of force to her body are not enough to show that his contact was excessive. Dkt. 72 at 10–11. Third, the Deputies are entitled to qualified immunity because Ms. Lumumba has not "identified a specific law that was violated," nor were they "aware [Ms. Lumumba] suffered from any medical condition." *Id.* at 11–13.

Preliminarily, the Court grants the motion to dismiss count five against Deputy Uti with prejudice, as the allegations relevant to this count do not mention him.

ORDER ON PENDING MOTIONS - 14

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To resolve a claim of qualified immunity, courts must consider two steps. "First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (internal citations omitted). "Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id.* The Court may exercise discretion "in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 236.

Ms. Lumumba has satisfied the first step, as she has alleged a violation of a constitutional right. "The Fourth Amendment requires police officers making an arrest to use only an amount of force that is objectively reasonable in light of the circumstances facing them." *Blankenhorn v. City of Orange*, 485 F.3d 463, 477 (9th Cir. 2007) (citing *Tennessee v. Garner*, 471 U.S. 1, 7–8 (1985)). To determine whether a specific use of force was reasonable, courts must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing government interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (internal quotation marks omitted) (quoting *Garner*, 471 U.S. at 8). It is not a "precise" standard, but it "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [she] is actively resisting arrest or attempting to evade arrest by flight." *Id.* Ms. Lumumba alleges that she was not resisting when Deputy Piland used "physical force." Dkt. 94-1 at 13. She further alleges that this force was used despite: (1) Deputy

Piland being told that this was a medical crisis, not a crime; and (2) her "visible disability, cervical instability, open wounds, and post-coma neurological impairment." *Id*. at 11–13. This force ultimately "impaired the normal communication pathways between the brain, spinal cord, and peripheral nerves, producing slowed processing, delayed motor response, impaired coordination, dysphagia-related airway distress, and episodic loss of balance." *Id.* at 13. Pierce County has an interest in using pain compliance techniques to aid one's arrest, *see Forrester v. City of San Diego*, 25 F.3d 804, 807 (9th Cir. 1994); however, the "nature and quality" of this intrusion of Ms. Lumumba's Fourth Amendment right significantly outweighs that interest. Therefore, Ms. Lumumba has sufficiently alleged that Deputy Piland's use of force was unreasonable under the circumstances and violated her Fourth Amendment rights.

Ms. Lumumba has also satisfied the second step, as "the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson*, 555 U.S. at 232. In 2007, the Ninth Circuit held in *Blankenhorn v. City of Orange* that "force is only justified when there is a need for force." 485 F.3d 463, 481 (9th Cir. 2007). A reasonable officer would therefore be on notice that using force to carry out an arrest of someone who poses no threat, is not suspected of a serious crime, is not actively resisting, and is in a medical crisis would violate the Fourth Amendment. *See id.* With the state of the law "clearly established" at the time of Ms. Lumumba's arrest, Deputy Piland is not entitled to qualified immunity as to count five at this time.[2]

The Court finds that Ms. Lumumba has successfully pled an excessive force claim against Deputy Piland. Accordingly, Deputy Piland's motion to dismiss count five is denied.

---

[2] This does not remain static. As more evidence related to the use of force and the circumstances of Ms. Lumumba's arrest are produced, the Court's analysis of qualified immunity may change.

ORDER ON PENDING MOTIONS - 16

8.    *Count [six]: "Disability Discrimination"*[3]

This claim is made under the "Americans with Disabilities Act [("ADA")], 42 U.S.C. § 12132; Section 504 of the Rehabilitation Act, [and] 29 U.S.C. § 794." Dkt. 94-1 at 48. Ms. Lumumba alleges that the Defendants booked her "despite medical instability," administered "contraindicated medications," withheld "essential life-sustaining medications for nearly thirty-nine (39) hours, despite clear medical necessity and known chronic conditions," misclassified her medical crisis as "psychiatric," and interpreted her disability symptoms as "non-compliance." *Id.* at 49–50. The Court construes this claim as a claim under the ADA and the Rehabilitation Act against Pierce County and NaphCare.

"Courts in this Circuit have found the elements of a claim under the Rehabilitation Act identical to those of a claim under the ADA." *Melegh v. Emily Program, P.C.*, No. 2:23-CV-01458-RAJ, 2024 WL 4277849, at *3 (W.D. Wash. Sept. 24, 2024). Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. In the context of arrests, an entity may be liable for two types of Title II claims:

> (1) wrongful arrest, where police wrongly arrest someone with a disability because they misperceive the effects of that disability as criminal activity; and (2) reasonable accommodation, where, although police properly investigate and arrest a person with a disability for a crime unrelated to that disability, they fail to reasonably accommodate the person's disability in the course of investigation or arrest, causing the person to suffer greater injury or indignity in that process than other arrestees.

---

[3] The operative complaint repeats the number five in its numeration of counts. Dkt. 94-1 at 48. In this order, the Court uses the correct numeration of the counts.

*Ivchenko v. City of Scottsdale*, No. 20-17463, 2021 WL 4739642, at *1 (9th Cir. Oct. 12, 2021) (quoting *Sheehan v. City & County of San Francisco*, 743 F.3d 1211, 1232 (9th Cir. 2014), *rev'd in part on other grounds*, *City & County of San Francisco v. Sheehan*, 575 U.S. 600 (2015)).

Pierce County argues that Ms. Lumumba "articulates no facts to support her conclusory statement that she was subjected to discrimination . . . as a result of her disability." Dkt. 89 at 4. The Court disagrees. Ms. Lumumba has successfully pled the first type of Title II claim against the County. She alleges that she was arrested because Pierce County Deputies misperceived her medical crisis and reaction to sertraline as a domestic violence incident. Dkt. 94-1 at 10–12. Ms. Lumumba has also successfully pled the second type of Title II claim against the County by alleging that deputies failed to reasonably accommodate her disability in their arrest and booking procedures in ways that exacerbated her injuries. *Id.* at 49–50. Accordingly, the Court denies Pierce County's motion to dismiss count six.

NaphCare argues that Ms. Lumumba's claim fails because the ADA and Rehabilitation Act "prohibit[] discrimination because of disability, not inadequate treatment *for* disability," and are not a remedy for medical malpractice. Dkt. 75 at 12 (quoting *Simmons v. Navajo County*, 609 F.3d 1011, 1022 (9th Cir. 2010), *overruled in part on other grounds by Castro v. County of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016)). The Court agrees, as the allegations against NaphCare, such as the administration of medication to Ms. Lumumba, *see* Dkt. 94-1 at 49–50, relate to whether NaphCare's provision of medical care was acceptable, not a failure to accommodate her disability in the arrest and booking process. Accordingly, the Court grants NaphCare's motion to dismiss count six with prejudice.

> 9.    Counts [seven and eight]: "Common Law Assault (Washington State)," and "Common Law Battery (Washington State)."

In count seven, Ms. Lumumba alleges that Deputy Piland threatened her with chemical sedation, and his actions caused her "emotional trauma, humiliation, psychological distress, exacerbation of neurological symptoms, and heightened physical instability." Dkt. 94-1 at 53–54. The Court construes this as an assault claim against Deputy Piland.

In count eight, Ms. Lumumba alleges that Deputy Piland forcefully handled her and, with the help of NaphCare medical staff, compelled her to ingest a sedative that resulted in injury. *Id.* at 54–55. The Court construes this as a battery claim against Deputy Piland and NaphCare.

The Court first considers the two counts against Deputy Piland. "Generally, a police officer making an arrest is justified in using sufficient force to subdue a prisoner, however he becomes a tortfeasor and is liable as such for assault and battery if unnecessary violence or excessive force is used in accomplishing the arrest." *Boyles v. City of Kennewick*, 62 Wn. App. 174, 176, 813 P.2d 178 (1991). Ms. Lumumba has sufficiently alleged that Deputy Piland used excessive force to arrest her and lead her through the booking process while she suffered a medical crisis. *See supra* Part III.B.5. Accordingly, the Court denies Deputy Piland's motion to dismiss counts seven and eight.

Next, the Court considers the battery counts against NaphCare. In support of its motion to dismiss count eight, NaphCare makes several arguments. First, Ms. Lumumba fails to identify which NaphCare personnel committed the alleged battery. Dkt. 92 at 6. Second, the complaint does not provide facts to establish that a medical provider had intent to cause harmful or offensive contact or apprehension of such contact when administering medication. *Id.*

"A battery is the intentional infliction of harmful or offensive bodily contact with the plaintiff." *Sutton v. Tacoma Sch. Dist. No. 10*, 180 Wn. App. 859, 865, 324 P.3d 763 (2014).

ORDER ON PENDING MOTIONS - 19

"For there to be intent to cause harmful or offensive contact, the act must be done for the purpose of causing the contact . . . or with knowledge on the part of the actor that such contact . . . is substantially certain to be produced." *Id.* at 865–66 (internal quotation marks omitted) (quoting *Garratt v. Dailey*, 46 Wn.2d 197, 201–02, 279 P.2d 1091 (1955)). The complaint does not sufficiently allege that NaphCare personnel had the requisite intent for battery. Accordingly, the Court grants NaphCare's motion to dismiss count eight with prejudice.

       10.     *Count [nine]: "Medical Malpractice and Continuing Negligence"*

This count is brought under RCW chapter 7.70 against the MultiCare defendants. Dkt. 94-1 at 55–56. Ms. Lumumba alleges that the MultiCare defendants "provided healthcare services to [her], including diagnostic evaluation, mental-health assessment, documentation, and medical decision-making," and breached their duty by misdiagnosing a brain tumor, and misclassifying her "sertraline toxicity, TBI deterioration, neurological collapse, and mobility impairment as 'psychiatric.'" *Id.* at 56. Ms. Lumumba further alleges that she suffered "[i]ncreased neurological risk and destabilization," "[e]motional and psychological harm," and "[c]ontaminated medical records that continue to impair present and future medical treatment" as a result. *Id.* at 57.

In support of their motion to dismiss, the MultiCare defendants make several arguments. First, Ms. Lumumba "misunderstands" the MultiCare defendants' role in this incident. Dkt 74 at 14. They contend that Brown provided no medical care as she was acting as a DCR, who simply evaluates whether someone meets the criteria for detention under the ITA. *Id.* They conclude that this count should be dismissed as a matter of law because DCRs are regulated by RCW 71.05, not RCW 7.70. *Id.* at 15. Second, under RCW 71.05.120(1), Brown's actions are immune from liability. Dkt. 90 at 6.

The Court agrees. Regardless of Ms. Lumumba's misunderstanding of Brown's role as DCR, under RCW 71.05.120(1), Brown is immune from civil liability for her decision regarding detention for evaluation or treatment unless the decision was made in bad faith or with gross negligence. Ms. Lumumba does not plausibly allege that Brown performed her duties in bad faith or with gross negligence, and Brown ultimately decided that Ms. Lumumba did not meet the criteria for involuntary treatment. Accordingly, the MultiCare defendants' motion to dismiss count nine with prejudice is granted.

> 11.    *Count [ten]: "42 U.S.C. § 1983 – Objective Deliberate Indifference to Serious Medical Needs (Fourteenth Amendment)"*

This claim is brought under Section 1983 and the Fourteenth Amendment. Dkt. 94-1 at 58. Ms. Lumumba does not explicitly mention a specific defendant, but alleges that "Defendants," "[d]espite direct, undeniable notice of [her] critical medical condition," "demonstrated objective deliberate indifference by intentionally denying and interfering with necessary medical care." *Id.* at 60. Ms. Lumumba further alleges that "[a]ny reasonable officer or medical provider would recognize such symptoms as requiring emergency evaluation and ambulance transport." *Id.* at 59. Given the mention of "officer" and "medical provider," the Court construes this count as a claim of deliberate indifference in medical treatment for a pretrial detainee under the Fourteenth Amendment against NaphCare and Deputy Piland. The elements of such a claim are:

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

ORDER ON PENDING MOTIONS - 21

*Gordon v. County of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018). A plaintiff must show "something akin to reckless disregard." *Id.* (quoting *Castro*, 883 F.3d at 1071).

NaphCare argues that it cannot be liable as an entity under Section 1983 through a theory of respondeat superior. Dkt. 75 at 10. The Court agrees. The Supreme Court has precluded the use of respondeat superior to place Section 1983 liability onto entities. *Heath v. Redbud Hosp. Dist.*, 620 F.2d 207, 209 (9th Cir. 1980) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978)). Accordingly, the Court dismisses this count against NaphCare with prejudice.

Deputy Piland argues that Ms. Lumumba "fails to plead facts that establish personal participation, much less deliberate indifference." Dkt. 89 at 3. But Ms. Lumumba has successfully pled each element of the claim. She establishes the first and third elements by alleging that Deputy Piland refused "appropriate ambulance transport to a medical facility." Dkt. 94-1 at 61. Ms. Lumumba establishes the second element as she alleges Deputy Piland caused medical care to be withheld for approximately thirty-nine hours, causing her to suffer "worsening physical symptoms." *Id.* at 60. Lastly, the fourth element is established, because it is alleged that "[t]hese intentional acts of indifference directly caused [her] injuries to worsen." *Id.* at 61. Accordingly, Deputy Piland's motion to dismiss count ten is denied.

> 12.    Count [eleven]: *"Objectively Unreasonable & Life-Endangering Chemical Restraint"*

This claim is made under Section 1983 and the Fourteenth Amendment against "[a]ll Defendants." *Id.* at 63. Ms. Lumumba alleges that "Defendants administered Hydroxyzine Pamoate, a sedative with known risks," as a "non-consensual chemical restraint," which interfered with her taking her necessary medications "for more than 39 hours, compounding her neurological and respiratory instability." *Id.* at 64–65.

ORDER ON PENDING MOTIONS - 22

The Court dismisses this count without prejudice as it is unclear whom this claim is against. *See Wright*, 2014 WL 5830318, at *5 ("These allegations are inadequate because they lump all defendants together and fail to allege the factual basis for each defendant's liability."). Ms. Lumumba may seek leave to amend this claim if she learns of the identity of the intended defendant. Apart from that, further leave to amend will not be granted. Ms. Lumumba has had multiple opportunities to amend and further amendments would be futile. *See Peramas v. Davy*, No. 2:25-CV-1569-JNW, 2025 WL 3657213, at *2 (W.D. Wash. Dec. 17, 2025).

## IV.    CONCLUSION

Ms. Lumumba's motion to amend her complaint (Dkt. 94) is GRANTED, making her proposed fourth amended complaint the operative complaint.

After analyzing the three motions to dismiss in light of the newly operative complaint, the Court orders the following: The Pierce County defendants' motion to dismiss, Dkt. 72, is GRANTED in part and DENIED in part. NaphCare's motion to dismiss, Dkt. 75, is GRANTED. The MultiCare defendants' motion to dismiss, Dkt. 74, is GRANTED.

These counts are DISMISSED WITH PREJUDICE:

- All claims against "Pierce County Jail Administration," "Sheriff's Office," and "911 Dispatch."

- Count one, "Monell Liability (42 U.S.C. § 1983))," against the MultiCare defendants, NaphCare, and Pierce County.

- Count four, "Equal Protection (Racial Discrimination)," against Deputies Piland and Uti.

- Count five, "Excessive Force By Deputies," against Deputy Uti.

- Count [six], "Disability Discrimination," against NaphCare.

- Count [eight], "Common law battery (Washington State)," against NaphCare.

- Count [nine], "Medical Malpractice and Continuing Negligence," against the MultiCare Defendants.

ORDER ON PENDING MOTIONS - 23

- Count [ten], "42 U.S.C. § 1983 – Objective Deliberate Indifference to Serious Medical Needs (Fourteenth Amendment)," against NaphCare.

These counts are DISMISSED WITHOUT PREJUDICE:

- Count [eleven], "Objectively Unreasonable & Life-Endangering Chemical Restraint."

These counts have survived the three motions to dismiss:

- Count three, "Fabrication of Evidence and Misclassification of Medical Crisis," against Deputy Piland.

- Count five, "Excessive Force By Deputies," against Deputy Piland.

- Count [six], "Disability Discrimination," against Pierce County.

- Count [seven], "Common law assault (Washington State)," against Deputy Piland.

- Count [eight], "Common law battery (Washington State)," against Deputy Piland.

- Count [ten], "42 U.S.C. § 1983 – Objective Deliberate Indifference to Serious Medical Needs (Fourteenth Amendment)," against Deputy Piland.

As a result, only Deputy Joshua Piland and Pierce County remain as Defendants to this case.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 13 day of April, 2026.

Tiffany M. Cartwright
United States District Judge

ORDER ON PENDING MOTIONS - 24